UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————x

EXCELSIOR CAPITAL LLC,

          Plaintiff,

   -against-                            No. 11 Civ. 7373 (CM)

HERBERT A. ALLEN, TERRY ALLEN KRAMER,
and TERENCE C. McCARTHY,

          Defendants.

————————————————————————————x

**DECISION AND ORDER GRANTING DEFENDANTS'
JOINT MOTION TO DISMISS**

McMahon, J.:

    On October 18, 2011, Plaintiff Excelsior Capital LLC sued Herbert A. Allen, Terry Allen

Kramer, and Terence C. McCarthy, alleging that they conspired to, and did, fraudulently convey

an 18.334% interest in a piece of property in Arizona (the "Maricopa Ranch") that was owned by

Herbert Allen's cousin and Kramer's sister, Robert Allen, to a family limited liability corporation

known as Allen Ranches, LLC ("Allen Ranches"). Allen Ranches was formed on February 25,

2011; the allegedly fraudulent conveyance occurred on March 2, 2011.

    Long before the alleged conveyance, Plaintiff had sued Robert Allen, who was a resident

of Nassau County, in the New York State Supreme Court, alleging that Robert Allen was liable

to Excelsior as the guarantor of certain loans Excelsior made to a third party. In June 2009, a

Justice of the Supreme Court granted a motion for a directed verdict dismissing Excelsior's claim

against Robert Allen at the close of Plaintiff's evidence. On March 1, 2011—after the formation

of Allen Ranches but the day before the allegedly fraudulent conveyance—the Appellate

Division of the State Supreme Court reversed the directed verdict and remanded the case for a

1

new trial. At the second trial, Excelsior prevailed, and judgment was entered in its favor on September 21, 2011, in the amount of $25,307,940.33.

Robert Allen died on March 9, 2011, a week after the conveyance of his interest in the Maricopa Ranch.[1] Plaintiff wants to collect its judgment; Robert Allen's family claims that he died without sufficient assets to satisfy the judgment. Obviously, Plaintiff views Robert Allen's interest in the Maricopa Ranch as an asset that can be utilized to satisfy at least some portion of the judgment (Excelsior affirmatively pleads that Robert Allen's interest in the Maricopa Ranch exceeds $2.75 million).

Excelsior had no judgment against Robert Allen on the date Allen Ranches was founded; indeed, on that date it was not even a creditor of Robert Allen's, since its complaint against him had been dismissed. And Plaintiff affirmatively pleads that the other members of the Allen Family against whom it had no claim (including Herbert Allen and Terry Allen Kramer) also owned interests in Maricopa Ranch, which they conveyed to Allen Ranches LLC at or about the same time that Robert Allen allegedly did so.

Nonetheless, Plaintiff contends that the conveyance of Robert Allen's interest in the Maricopa Ranch was effected in order to defeat Excelsior's ability to collect any judgment it might recover against Robert Allen if the dismissal were reversed and Excelsior prevailed on remand. He claims that Defendants Herbert Allen and/or Terry Allen Kramer either forged Robert's signature on the deed of conveyance or caused it to be forged, and that Defendant McCarthy, a senior Allen & Co. executive, falsely notarized the forged signature, in order to defeat Excelsior's rights as a "prospective creditor." It contends that Herbert Allen "raced" to form Allen Ranches, on the very day his cousin entered the hospital, in case a judgment in the

---

[1]     Robert Allen's Estate was substituted as the party defendant in the Nassau County Litigation.

not-yet-reinstated Nassau County Litigation should result in the forced sale of the Maricopa

Ranch. Plaintiff alleges that the value of Robert Allen's LLC interest (which, of course, could

also be used to satisfy the judgment) would be far less than the value of his direct ownership

interest in the Maricopa Ranch, and that Excelsior would be forced to accept a much lower price

for "its" interest (meaning Robert Allen's interest) in the ranch if the other Allen family members

bought him out.

In its prayer for relief, Plaintiff sought to have the transferred interest re-conveyed to the

Estate of Robert Allen, although neither Mr. Allen's Estate (which has succeeded to his liability

to Excelsior) nor Allen Ranches (the family-controlled enterprise to which the property was

allegedly transferred) was named as a party defendant. Furthermore, Plaintiff has already

received all the relief to which it is entitled; no sooner had this lawsuit been filed than Robert

Allen's interest in the Arizona Property was re-conveyed back to the Estate by Allen Ranches

LLC, making it ripe for Plaintiff's plucking in an action to enforce its judgment. Plaintiff admits

that it has no claim for compensatory damages against Defendants. Nonetheless, Plaintiff pursues

this action in order to obtain punitive damages and attorneys' fees.

Defendants move to dismiss the Complaint. The motion is granted, because the

Complaint fails to state a claim. Plaintiff alleges fraudulent conveyance and conspiracy to

commit fraudulent conveyance, but the allegations of the Complaint do not state a claim under

Arizona's fraudulent conveyance law, which governs here. In Arizona, "A transfer made . . . *by a*

*debtor* is fraudulent as to a creditor . . . *if the debtor made the transfer* . . . ." Ariz. Rev. State.

§ 44-1004 (emphases added). But the only person who might have owed money to Plaintiff was

Robert Allen; and Plaintiff does not allege that the Robert Allen effected the transfer of his

interest in the Maricopa Ranch to Allen Ranches. In fact, Excelsior unambiguously absolves

3

Robert Allen of any wrongdoing in connection with the transfer of the property. It alleges that the property was effectively stolen via the medium of a forged signature on the deed of transfer. That fact pattern does not state a claim of fraudulent conveyance under Arizona law. As for conspiracy to commit a fraudulent conveyance, where there is no fraudulent conveyance, there can be no conspiracy to commit that tort—that is true whether the applicable law is Arizona's or New York's.

Defendants' motion is granted, and this case is dismissed, with prejudice.

## BACKGROUND

### I. The Parties

Plaintiff Excelsior Capital LLC ("Plaintiff" or "Excelsior") is a limited liability company organized under the laws of the State of New York. (Compl. ¶ 7.) Richard Davis ("Davis"), its sole member, resides in Nassau County, New York. (*Id.*)

Defendant Herbert A. Allen ("Herbert Allen") is a citizen of Wyoming. (*Id.* ¶ 8.) Herbert Allen is the CEO of Allen & Company, a private investment bank. (*Id.*) Herbert Allen is Robert Allen's cousin.

Defendant Terry Allen Kramer ("Kramer"), a theater producer, is a citizen of Florida. (*Id.* ¶ 9.) Kramer is Robert Allen's sister. (*Id.* ¶ 11.)

Defendant Terence C. McCarthy ("McCarthy") is a citizen of New Jersey. (*Id.* ¶ 10.) McCarthy is licensed as a notary by New York (License No. 01MC4767-198). (*Id.*) McCarthy is employed by Allen & Company as its Vice President and Co-Chief Operations Officer. (*Id.*)

## II.   The Arizona Property

This case involves a large parcel of ranch land in Arizona that had been owned by C. Robert Allen, III ("Robert Allen"), Herbert Allen, Kramer, and other members of the Allen family, jointly and directly, for more than 50 years (the "Maricopa Ranch"). (Compl. ¶ 19.) Before March 2, 2011, Herbert Allen held a 14% interest in the Maricopa Ranch, Kramer held a 18.334% interest, Robert Allen held a 18.334% interest, and the other family members the remaining 49.332%. (*Id.* ¶¶ 19, 25.) Plaintiff alleges, on information and belief, that the total value of the property exceeds $15 million, putting Robert Allen's share at about $2.75 million. (*Id.* ¶ 19.)

## III.   The Excelsior and Robert Allen Litigation

From the 1990's through 2006, Robert Allen loaned more than $80 million to Superior Broadcasting Co., a business "purportedly engaged in the business of buying, operating and selling radio stations" ("Superior Broadcasting"). (*Id.* ¶¶ 12-14.) In 2004 or 2005, Robert Allen's family became concerned that Superior Broadcasting was a fraudulent enterprise, and began pressuring him to cease lending money to it. (*Id.* ¶ 13.)

Still believing that Superior Broadcasting could be a successful venture if funded adequately, Robert Allen convinced Davis, who was his neighbor, to loan money to Superior Broadcasting, as well as to related companies and individuals. (*Id.* ¶ 14.) Davis did so through Excelsior. He loaned over $40 million over the course of two years. (*Id.*) Of those loans, $18 million went to Superior Broadcasting. Plaintiff claims that Robert Allen personally guaranteed $13 million of the loans to Superior. (*Id.*)

In 2006, Superior defaulted on its obligation to repay Excelsior. (*Id.* ¶ 15.)

5

On January 9, 2007, Excelsior sued Robert Allen in the Supreme Court of New York: *Excelsior Capital LLC v. C. Robert Allen, III*, No. 08289/07 (N.Y. Sup. Ct. Nassau Co.) (the "Nassau County Litigation"). (*Id.* ¶ 16.) The case went to trial in June 2009. At the close of the evidence, the trial court dismissed Excelsior's claims against Robert Allen as guarantor of Excelsior's loans to Superior, on the ground that "Superior Broadcasting and Excelsior had modified the terms of the loans that Robert Allen had guaranteed without Robert Allen's knowledge." (*Id.*)

Plaintiff timely appealed the dismissal of its claims to the New York State Supreme Court, Appellate Division, Second Department. (*Id.* ¶ 17.)

## IV.    The Events Giving Rise To This Lawsuit

In the last few years of his life, Robert Allen suffered from a number of serious illnesses; in late February 2011, his health began to decline rapidly. (*Id.* ¶ 18.) On February 25, 2011, Robert Allen entered St. Francis Hospital in Flower Hill, Nassau County, New York; he remained there until his death two weeks later, on March 9, 2011. (*Id.*)

When Robert Allen's last illness began, the appeal from the judgment dismissing Excelsior's claims against Robert Allen was still pending; no decision had been announced. Nonetheless, according to Plaintiff, Herbert Allen and Kramer recognized that their cousin/brother "was entering the hospital and was about to die, and [was] faced with the possibility of an appellate reversal and retrial of the claims against Robert Allen." (*Id.* ¶ 20.) Plaintiff alleges that "Herb Allen and Kramer, who are very sophisticated in business matters, undoubtedly knew, if judgment were to be entered at a time when Robert Allen or his Estate had a direct ownership interest in the Maricopa Ranch, Excelsior would be able to force a partition and sale of the property . . . ." (*Id.* ¶ 23.) Plaintiff further alleges that, "if the Maricopa Ranch

6

were to be owned by an LLC in which Robert Allen or his Estate held an 18.334% interest,

Excelsior would no longer have the right to force the sale of the land." (*Id.*) This interest in an

LLC would be worth "far less than the value of a direct ownership interest in the land due to

traditional discounts for lack of control and lack of marketability." (*Id.*)

Therefore, on February 25, 2011, Herbert Allen and Kramer, aided by McCarthy,

allegedly entered into a

> conspiracy to hinder, delay and defraud Excelsior, as a prospective
> creditor of Robert Allen and/or his Estate, by creating a limited
> liability company, Allen Ranches, LLC . . . into which all of the
> Allen Family's ownership interests in the Maricopa Ranch,
> including Robert Allen's 18.334% ownership interest, were to be
> transferred in return for, *inter alia*, minority interests in Allen
> Ranches.

(*Id.* ¶ 20.)

Plaintiff alleges that Allen Ranches was incorporated the very day that Robert Allen was

hospitalized, because "Herb Allen and Kramer . . . knew that, upon the death of Robert Allen, the

opportunity to accomplish a quick transfer of the Maricopa Ranch to Allen Ranches would be

lost due to the legal delays inherent in probating a will." (*Id.* ¶ 21.)

On March 1, 2011—over a year and a half after the initial decision and just four days

after the creation of Allen Ranches—the New York State Supreme Court, Appellate Division,

Second Department finally issued its decision. It reversed the dismissal of Excelsior's claims

against Robert Allen, and directed the Supreme Court to hold a retrial. (*Id.* ¶ 24); *see also*

*Excelsior Capital, LLC v. Superior Broad. Co.*, 918 N.Y.S.2d 148 (N.Y. App. Div. 2011).

On March 2, 2011, Herbert Allen and Kramer executed deeds—notarized by McCarthy—

pursuant to which they transferred their direct ownership interests in the Maricopa Ranch to

7

Allen Ranches. (Compl. ¶ 25.) Herbert Allen and Kramer are the managing members of Allen Ranches. (*Id.* ¶ 36.)

Also on March 2, 2011, Plaintiff alleges that "Herbert Allen or Kramer either forged, or arranged for the forgery of, Robert Allen's signature on a deed transferring Robert Allen's 18.334% interest in the Maricopa Ranch to Allen Ranches" in exchange for five dollars and other valuable consideration. (*Id.* ¶ 26.) McCarthy then notarized the fraudulent signature. (*Id.*) Plaintiff contends that the signature was a forgery for two reasons. First, McCarthy's notary seal is a New York Country seal, but Robert Allen's Death Certificate shows that he entered the hospital on February 25, 2011, and remained there until he died on March 9, 2011, so he could not have signed the document in New York County. (*Id.*, Exs. A & E.) Second, a comparison of Robert Allen's signature on the deed of transfer with two undisputed examples of his signature suggests that the signature is not Robert Allen's. (*Id.*, Exs. E-G.)

Plaintiff is quite clear that, "There can be no doubt about the fact that the purported Robert Allen signature on the deed is a forgery," (*Id.* ¶ 26), and that Robert Allen did not himself execute the deed or make any effort to convey his interest in Maricopa Ranch to the family LLC. Plaintiff makes no claim that Robert Allen authorized an agent to sign his name on the deed at issue or that he issued a power of attorney in favor of anyone—indeed, the allegations of forgery foreclose these possibilities. To drive the point home, Plaintiff pleads that Herbert Allen and Kramer committed a felony, punishable by a prison term of seven years in New York or three and a half years in Arizona. (*Id.* ¶ 2).

On March 9, 2011, Robert Allen passed away. His Estate was substituted as the defendant in the Nassau County Litigation.

8

On September 21, 2011, after a jury trial, a judgment in the Nassau County Litigation was entered against Robert Allen's Estate for $25,307,940.33. (*Id* ¶ 28.)

On October 15, 2011—three weeks after obtaining its judgment against Robert Allen's Estate—Plaintiff's counsel sent a letter with a draft of the Complaint to counsel for Robert Allen's Estate, with the request that it be sent to the Defendants. (*Id.* ¶ 30.) The letter offered Defendants an opportunity to settle the case before Plaintiff filed it. (*Id.*)

On October 17, 2011, Herbert Allen responded by letter. Plaintiff directly addresses the letter in and attaches the letter to the Complaint, which makes Herbert Allen's side of the story fair game on a motion to dismiss. (*Id.*, Ex. H.) In the letter, Herbert Allen claimed that he had no direct business dealings with Robert Allen for more than 25 years, and could not recall speaking with or seeing Robert Allen in over 30 years. (*Id.*) Moreover, Herbert Allen stated that his "relationship with [Robert Allen] was such that [Herbert Allen] was not aware of his failing health until [Herbert Allen] learned of his death, shortly after it had occurred." (*Id.*) Because of this relationship, Herbert Allen informed Plaintiff's counsel that:

- I had no knowledge that [Robert Allen] had invested in Superior Broadcasting, Inc.

- I had no knowledge that Excelsior Capital was engaged in litigation with [Robert Allen] relating to loans from Excelsior Capital to Superior Broadcasting guaranteed by him

- I had no knowledge that [Robert Allen] had prevailed at trial in that lawsuit, that Excelsior Capital had appealed that decision and that in late February 2011 "a decision on appeal was imminent."

(*Id.*) As to the formation of Allen Ranches, Herbert Allen claimed that the attorneys for Allen Ranches, "were recommending transferring ownership to a limited liability company in early November 2010 and that drafts of the documents were under preparation in December." (*Id.*)

9

This latter contention finds support in the deeds attached to Plaintiff's Complaint, which contain timestamps bearing the date "12/28/2010." (Compl., Exs. C & D.)

This letter, and especially the date stamps that are incorporated into Plaintiff's Complaint by reference, renders implausible Plaintiff's theory that Allen Ranches was hastily formed on the date that Robert Allen went into the hospital, as part of a conspiracy that began in February 2011 to effect the hasty transfer of Robert Allen's interest in Maricopa Ranch. Nonetheless, Plaintiff alleges that the letter actually supports its claim of forgery, for six reasons:

(1) Herbert Allen does not explicitly deny having caused Robert Allen's signature to be forged (though that is the fair implication of what the letter says), (*id.* ¶ 31);

(2) Herbert Allen lied when he said he had no direct business dealings with Robert Allen for 25 years because Robert Allen was not bought out of the family business until 1996, which is only 15 years ago (though it was hardly necessary that Herbert Allen deal directly with Robert Allen in connection with that buyout);

(3) Herbert Allen lied when he said that he had not seen his cousin in 30 years because "it is inconceivable that [Herbert and Robert Allen] did not attend family affairs together" (a conclusion with which many an estranged family would disagree);

(4) Allen lied because it is "too much of a coincidence" that Allen Ranches was incorporated on the very day Robert Allen entered the hospital (ignoring the *pleaded* fact that the effort began some months earlier);

(5) Allen lied because "is inconceivable that Robert Allen's illness and the lawsuit would not have been discussed" on the day that Defendants signed over their ownership in the Ranch to the LLC; and

(6) McCarthy, one of Herbert Allen's senior executives, would "never have falsely notarized Robert Allen's forged signature unless Herb Allen directed him to do so." (*Id.* ¶ 33.)

Obviously, most of this is sheer speculation on the part of Plaintiff and its counsel, and so is of no value on this motion.

Plainly dissatisfied with the letter, Plaintiff filed the Complaint on October 18, 2011.

Later that same day, the LLC re-conveyed Robert Allen's interest in Maricopa Ranch to the Estate of Robert Allen (*See* Opp'n at 1, 18, 23.) This singular act gave Plaintiff everything to which it could have been either legally or equitably entitled, and Plaintiff acknowledges as much when it admits that, "this controversy no longer concerns compensatory damages or equitable relief. The fraudulent transfer at the heart of this case was undone." (Opp'n at 1.)

Nonetheless, Plaintiff contends that it still "has a right to pursue punitive damages and attorneys' fees so long as its Complaint stated a claim when this case was filed." (*Id.*)

\*\*\*

On January 5, 2012, Defendants filed a joint motion to dismiss pursuant to Federal Rules of Procedure 12(b)(1), 12(b)(6), and 9(b). Herbert Allen and McCarthy also filed separate memoranda of law in support of the joint motion to dismiss. Since the portion of Defendants' motion to dismiss that was filed under Rule 12(b)(1)—in which Plaintiff argued solely that Plaintiff's claim for compensatory damages is moot—has itself been mooted by the re-conveyance of the property at issue, I need not consider it.

## DISCUSSION

### I.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).

However, to survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

11

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 129 S. Ct. at 1950-51.

At first blush, it is difficult to see why Plaintiff should be allowed to proceed with this lawsuit. Excelsior admits that it no longer has any claim for compensatory damages or for equitable relief; the property that is hopes to use to satisfy its judgment against the Robert Allen Estate was re-conveyed by its owner—non-party Allen Ranch—to the Robert Allen Estate on the same day this action was filed. (*See* Opp'n at 1, 18, 23.)

However, "Where a plaintiff has requested several forms of relief and some of the requests become moot, the court must still consider the viability of the remaining requests." *Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001) (citing *Jersey Cent. Power & Light Co. v. State of N.J.*, 772 F.2d 35, 40 (3d Cir.1985). "[T]he availability of damages or other monetary relief almost always avoids mootness." *Id.* (quoting *Jersey Cent. Power & Light Co.*, 772 F.2d at 40); *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) ("a viable claim for damages generally avoids mootness of the action."). But "the mere possibility of recovering attorneys' fees will not prevent an action from being rendered moot in the absence of any other possible operative relief." *Goldberg v. Taylor Wine Co.*, 499 F. Supp. 468, 470 (E.D.N.Y. 1980)

12

Here, although Plaintiff admits that it has suffered no compensable injury, it contends that it nonetheless has a viable claim for punitive damages, because of the egregious nature of the conduct alleged. Plaintiff prayed for punitive damages in the *ad damnum* clause in the complaint; it contends that this prayer for relief keeps the otherwise moot complaint alive.

Punitive damages are not a separate cause of action, so a request for punitive damages does not, in and of itself, state a "claim upon which relief may be granted," to use the language of Fed. R. Civ. P. 12(b)(6). Punitive damages are available as a remedy in cases of egregious wrongdoing that is punishable as some other type of claim for relief—libel, or gross negligence or fraud, for example. *See, e.g., Stein v. N. Assur. Co. of Am.*, 09-CV-1029 TCP AKT, 2012 WL 1605365, at *8 n.5 (E.D.N.Y. May 7, 2012); *Cadle Co. v. Organes Enters., Inc.*, 815 N.Y.S.2d 732, 734 (N.Y. App. Div. 2006). In this case, punitive damages are allegedly to be a remedy available for the purportedly fraudulent conveyance that wrested Robert Allen's direct ownership of the Maricopa Ranch away from him and into the Allen Ranches.

Of course, on the facts alleged, Plaintiff had no ripe interest in any property owned by Robert Allen on the date that the deed of transfer was executed, because Excelsior, which was not a judgment creditor of Robert Allen at that time, had no legal right to attach his property or to levy execution against it. Plaintiff's only interest in Robert Allen's property—as a judgment creditor—did not ripen until September 21, 2011. Here, on the allegations of Plaintiff's own Complaint, no sooner did it have a ripened interest in property formerly belonging to Richard Allen than that property was re-conveyed to Richard Allen (or, more properly, to his Estate). The re-conveyance occurred less than a month after the entry of judgment in the Nassau County Litigation and less than a week after Plaintiff notified other members of the Allen Family (and the most prominent ones at that) that it was going to sue to get the property back. Under the

13

circumstances, no court would ever charge a jury on the issue of punitive damages—at least, this Court would not—since Plaintiff was never in a position where an effort to enforce its judgment were frustrated. It is, therefore, simply inconceivable that Plaintiff still has any viable claim for relief to pursue in this action.

In fact, it is highly questionable whether Plaintiff even has, or ever had, standing to pursue this action! What Plaintiff actually alleges in its Complaint is that Herbert Allen and Kramer (aided by McCarthy) *stole* Robert Allen's share of the Maricopa Ranch. But this putative "theft" occurred before Plaintiff ever had a ripe interest in any property owned by Robert Allen, because Plaintiff's only interest in Robert Allen's property—as a judgment creditor—did not ripen until September 21, 2011. Accordingly, Defendants' actions, if true, only wronged Robert Allen (as the owner of the property), not Plaintiff. Plaintiff does not proffer any theory why it should have standing to sue on behalf of Robert Allen, nor can the Court think of one.

But if Plaintiff did have standing, it could only continue its action in this New York court if it had pleaded a viable claim for fraudulent conveyance under Arizona law.

Plaintiff has not done so.

## II.   Plaintiff's Complaint Fails To State A Claim

Plaintiff's claim for relief against Herbert Allen and Kramer is as follows:

> 36. Herb Allen and Kramer *jointly conspired to and did in fact make a fraudulent conveyance*—the transfer of Robert Allen's interest in the Maricopa Ranch to Allen Ranches—with actual intent to hinder, delay and defraud both present and future creditors of Robert Allen, particularly Excelsior.
>
> 37. Herb Allen and Kramer each (a) participated in the conveyance, (b) as the managing members of Allen Ranches, have dominion and control over the property interest conveyed, and (c) as members of Allen Ranches, are beneficiaries of the conveyance . . .

14

38. [Plaintiff's request for compensatory damages.]

39. [Plaintiff's request for punitive damages.]

40. Further, pursuant to N.Y. D.C.L. § 276-a, Plaintiff is entitled to recover its reasonable legal fees incurred in the prosecution of this action.

(Compl. at 11 (emphasis added).) Plaintiff alleges that Herbert Allen and Kramer fraudulently conveyed Robert Allen's property interest in Maricopa Ranch to Allen Ranches and conspired to do the same. Under New York law, there is no claim for naked conspiracy—one can only conspire to commit some other tort. *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (N.Y. 1986) ("A mere conspiracy to commit a [tort] is never of itself a cause of action." (alteration in original)). Therefore, if Plaintiff's allegations of fraudulent conspiracy against the Allen Defendants are legally insufficient, its conspiracy claim fails as well. *See Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009)

## A.   Plaintiff Fails To State A Fraudulent Conveyance Claim Against Herbert Allen and Kramer

### 1.   Choice of Law

A federal court exercising diversity jurisdiction must apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 313 (S.D.N.Y. 2010). "Under New York choice of law rules, where both parties agree as to the applicable law, that agreement is sufficient to establish choice of law." *Ashbaugh v. Windsor Capital Grp., Inc.*, 10 CIV. 4647 ILG LB, 2012 WL 2319240, at *3 n.2 (E.D.N.Y. June 19, 2012) (citing *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011)).

15

Here, both parties agree that Arizona law governs the question of whether the transfer of

Robert Allen's fractional ownership interest in Maricopa Ranch to Allen Ranches constituted a

fraudulent conveyance. *James v. Powell*, 19 N.Y.2d 249, 256 (N.Y. 1967) ("The validity of a

conveyance of a property interest is governed by the law of the place where the property is

located."); (*see* Opp'n at 13; Jt. Mot. at 9-10). Thus, the parties' agreement governs, and I will

apply Arizona law to assess whether Plaintiff has alleged facts that, if proved, would meet the

legal standard for "fraudulent conveyance" of property located in that state.

## 2.  Analysis

Arizona, like most states (thought not New York), has adopted the Uniform Fraudulent

Transfer Act (the "UFTA"). *See* Ariz. Rev. Stat. Ann. §§ 44-1001 to 44-1010 (adopted in 1990).

That law defines a fraudulent transfer (which is equivalent to a fraudulent conveyance) as

follows:

> *A transfer made or obligation incurred by a debtor* is fraudulent *as
> to a creditor*, whether the creditor's claim arose before or after the
> transfer was made or the obligation was incurred, *if the debtor
> made the transfer* or incurred the obligation under any of the
> following:
>
> 1.  With actual intent to hinder, delay or defraud any
>     creditor of the debtor.
>
> 2.  Without receiving a reasonably equivalent value in
>     exchange for the transfer or obligation, and the debtor
>     either . . .
>
>     (b) Intended to incur, or believed or reasonably
>     should have believed that he would incur, debts
>     beyond his ability to pay as they became due.

16

Ariz. Rev. State. Ann. § 44-1004 (emphases added). "Debtor" is defined as "a person who is liable on a claim." Ariz. Rev. Stat. Ann. Ann. § 44-1001. "Transfer" means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and includes payment of money, release, lease and creation of a lien or other encumbrance." *Id.* "Creditor" means "a person who has a claim," and a "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.*

The principal reason why Plaintiff fails to state a claim for fraudulent conveyance against Herbert Allen and Kramer is because they were not "debtors," under the plain language of the Arizona UFTA, since Excelsior had no "claim" against them. The language of the UFTA is clear: "A transfer made ... *by a debtor* is fraudulent as to a creditor ... *if the debtor made the transfer* ...." Ariz. Rev. State. § 44-1004 (emphases added). Plaintiff does not plead that it had any claim of any sort, liquidated or unliquidated, against Herbert Allen or Kramer. The only person whom Excelsior had any "claim" at the time of the transfer was Robert Allen, who had guaranteed Plaintiff's loans to Superior Broadcasting.

And Plaintiff does not allege that Robert Allen—its debtor, against whom it had a claim—transferred his interest in Maricopa Ranch. Instead he argues that Herbert Allen and Kramer were the "actual transferors" or the property, by virtue of forging Robert Allen's name on the deed; "Without that forgery and the fraudulent notarization, there could have been no transfer." (Opp'n at 18, 19 ("The Complaint's factual allegations support a claim that Defendants themselves, as the transferors, fraudulently transferred Robert Allen's direct interest in the Maricopa Ranch to Allen Ranches, LLC.").) Taking Plaintiff at its word, the persons who made

17

the transfer were not Plaintiff's debtor, Robert Allen. That means the transfer was not a

fraudulent conveyance under Arizona law, because it was not a transfer made by a debtor.

Furthermore, in order for there to be a fraudulent conveyance, there has to be a transfer of

property. But, if Plaintiff's allegations are accepted as true, *Robert Allen's property was never*

*actually transferred*!

Under Arizona law, which the parties agree governs the issue of the validity of the

conveyance of land at issue,

> No estate of inheritance, freehold, or for a term of more than one
> year, in lands or tenements, shall be conveyed unless the
> conveyance is by an instrument in writing, *subscribed and
> delivered by the party disposing of the estate*, or by his agent
> thereunto authorized by writing.

Ariz. Rev. Stat. Ann. § 33-401(A) (emphasis added). Moreover, "Every deed or conveyance of

real property *must be signed by the grantor* and must be duly acknowledged before some officer

authorized to take acknowledgments." *Id.* § 33-401(B) (emphasis added); *Watts v. Hogan*, 111

Ariz. 536, 537 (Ariz. 1975) ("All parties having an interest in the land to be conveyed must sign

the instrument of conveyance."). Any transfer of title purporting to convey the land without the

approval of the grantor, as evidenced by the grantor's signature or that of his agent, is void. *See*

*Crawford v. Williams*, 1 CA-CV 07-0894, 2008 WL 5066207, at *5 (Ariz. Ct. App. Nov. 28,

2008); *In re Estate of Kominek*, 1 CA-CV 09-0508, 2011 WL 941264, at *5 (Ariz. Ct. App. Mar.

17, 2011); *see also* Ariz. Rev. Stat. Ann. Ann. § 33-420 ("A document purporting to create an

interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or

other specific legal authority is presumed to be groundless and invalid.").

Here, Plaintiff alleges "Herb Allen or Kramer either forged, or arranged for the forgery

of, Robert Allen's signature on a deed transferring his 18.334% interest in the Maricopa Ranch to

18

Allen Ranches." (Compl. ¶ 26; *see also id.* ¶¶ 1 ("The brazenness of this fraud is staggering in that the Defendants herein did not merely assist in the transfer of property to defraud creditors, they did so by means of a forged signature of a dying man."), 3-4, 31-34, 36) Plaintiff is quite clear that, "There can be no doubt about the fact that the purported Robert Allen signature on the deed is a forgery," (*id.* ¶ 26); it is equally adamant that Robert Allen was not a part of any conspiracy to defraud Plaintiff, (*see id.* ¶ 20). Plaintiff makes no claim that Robert Allen in any way authorized an agent to sign his name on the deed at issue—indeed, his allegations of forgery foreclose that possibility.

Thus, the only inference, plausible or otherwise, that can be drawn from Plaintiff's allegations is that Robert Allen did not sign any document transferring his interest in the Maricopa Ranch to Allen Ranches, and did not authorize anyone else to do so on his behalf. But this means that Robert Allen never transferred anything, because any "conveyance" was void at the outset.

It would be no different if New York law applied. Robert Allen was a resident of New York, and the deed of transfer was allegedly executed in New York. Under New York law, a forged deed is ineffective to work a transfer of property. *Yin Wu v. Wu*, 733 N.Y.S.2d 45, 46 (N.Y. App. Div. 2001) ("A forged deed is void and conveys no title.").

Plaintiff's inability to plead any transfer or conveyance is fatal to its claim for punitive damages—the only claim Excelsior is pursuing. The key to any recovery at all here is the purported forgery of Robert Allen's signature; it is forgery that allegedly makes this particular transfer so reprehensible that it would warrant an award of punitive damages. Indeed, if there were no forgery—i.e., if Robert Allen, Herbert Allen, and Kramer worked together to convey Robert Allen's property interest to Allen Ranch—this case would look like a run-of-the-mill

19

fraudulent conveyance lawsuit. And punitive damages are not appropriately awarded in such an action. *Cadle Co.*, 815 N.Y.S.2d at 734 ("The Supreme Court should have stricken the plaintiff's demand for punitive damages, because even if the challenged conveyance was effected with the intent to avoid creditors, such conduct would not give rise to punitive damages."); *Blakeslee v. Rabinor*, 182 A.D.2d 390, 392 (N.Y. App. Div. 1992).[2]

Having failed to allege facts that admit of any inference: (1) that a debtor who owed money to Plaintiff on a claim transferred property; or (2) that there was a legally effective conveyance of property, Plaintiff fails to state a claim for fraudulent transfer against Herbert Allen and Kramer.

**B. Plaintiff Fails To State A Claim For Conspiracy To Commit A Fraudulent Conveyance Against Herbert Allen And Kramer**

Plaintiff also claims that Herbert Allen and Kramer (and possible McCarthy, although Plaintiff appears only to allege that McCarthy is liable on an aiding and abetting theory) are liable to Plaintiff because they conspired to commit a fraudulent transfer. The parties disagree over whether Arizona or New York law applies to the issue of conspiracy, and there is confusion between them over whether either state recognizes a separate tort of conspiracy to commit a fraudulent transfer. Ultimately, however, all that is immaterial, since Plaintiff fails to state a claim under either state's law for a conspiracy to commit a fraudulent conveyance.

Plaintiff argues that Herbert Allen and Kramer (and possibly McCarthy) entered into a civil conspiracy (governed by New York law) to commit a fraudulent transfer (governed by Arizona law). (*See* Opp'n at 16-17.) Defendants, by contrast, claim that because Arizona law

---

[2]     The parties agree that New York law covers Plaintiff's entitlement to punitive damages. *James*, 19 N.Y.2d at 256 (holding that a claim of fraudulent conveyance to frustrate a New York judgment is governed by the law of the state where real property was located, but holding that entitlement to punitive damages was governed by the law of New York, the site of the judgment.); (Jt. Mot. at 19; Opp'n at 20 n.8 ("We agree with Defendants that New York law governs the question of punitive damages.").

governs any claim for fraudulent transfer of real property located in Arizona, it necessarily governs a claim for conspiracy to commit a fraudulent transfer. (*See* Jt. Reply at 3.) In the alternative, Defendants contend that the New York Debtor and Creditor Law, on which Plaintiff relies, does not recognize a cause for conspiracy to commit a fraudulent transfer.

"Under New York choice of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566-67 (2d Cir. 2011) (quoting *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001)). "If not, no choice of law analysis is necessary." *Id.* I must therefore determine whether the law governing a *conspiracy* to commit a fraudulent transfer differs between New York and Arizona.

There is in fact no actual conflict of law to resolve in this instance. While both Arizona and New York recognize the tort of conspiracy to commit a fraudulent conveyance, the first and most important element of that tort in each state is that the plaintiff adequately plead that a fraudulent conveyance took place. As discussed above, Plaintiff pleads no such thing.

While little discussed in the case law, New York appears to recognize a claim for civil conspiracy to commit a fraudulent conveyance that is governed by a different state's laws. Although New York does not recognize "conspiracy" as an independent tort, *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing *Alexander & Alexander of N.Y.*, 68 N.Y.2d at 969), conspiracy allegations may be used to "to connect the actions of separate defendants *with an otherwise actionable tort*," *Fritzen*, 68 N.Y.2d at 969; *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (emphasis added) (quoting *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2004 WL 2339759, at *19 (S.D.N.Y. Oct. 15, 2004)).

21

Therefore, under New York law, no claim for civil conspiracy lies unless "the plaintiff

has adequately alleged an actionable underlying tort." *In re Magnesium Corp. of Am.*, 399 B.R.

722, 775 (Bankr. S.D.N.Y. 2009) (citing *Charney v. Sullivan & Cromwell LLP*, No.

100625/2007, 2007 WL 2822423, at *3 (N.Y. Sup. Ct. Sept. 27, 2007)); *see also Ho Myung

Moolsan Co.*, 665 F. Supp. 2d at 256 ("A claim of conspiracy 'cannot stand alone' and must be

dismissed if the underlying independent tort has not been adequately pleaded."). After this

threshold showing is made, a plaintiff must allege

> (i) facts constituting a common agreement or understanding, (ii) a
> common design or objective, (iii) the tortious or criminal acts
> committed in furtherance of the common agreement and objective,
> (iv) the intent and knowledge of the defendants regarding the acts,
> and (v) damage or injury as a result of the acts of the defendants.

*In re Magnesium Corp. of Am.*, 399 B.R. at 775 (citing *JP Morgan Chase Bank v. Winnick*, 406

F. Supp. 2d 247, 259 (S.D.N.Y. 2005)).

At least one court in this district has explicitly recognized a cause of action for a

conspiracy to commit a fraudulent conveyance. *UFCW Local 174 Comm. Health Care Fund v.

Homestead Meadows Foods Corp.*, 05 CIV. 7098 (DLC), 2005 WL 2875313, at *2-3 (S.D.N.Y.

Nov. 1, 2005).

Here, the short answer is that Plaintiff has not adequately alleged any otherwise

actionable tort. I have already dismissed Plaintiff's fraudulent conveyance claim on the ground

that Arizona recognizes no such claim brought against a non-debtor by a creditor of a third party.

Therefore, under New York law—the law Plaintiff urges—Excelsior has failed to state a claim

for civil conspiracy, because it has not tethered its allegations to any underlying actionable tort.

Like New York, Arizona recognizes a limited cause of action for conspiracy to commit a

fraudulent transfer. While this cause of action arose before Arizona enacted the UFTA, *see*

*McElhanon v. Hing*, 728 P.2d 256, 262-64 (Ariz. Ct. App. 1985), *aff'd in part, vacated in part*,

728 P.2d 273 (Ariz. 1986), courts in Arizona have continued to accept it as a valid cause of

action, *see, e.g.*, *Warne Investments, Ltd. v. Higgins*, 195 P.3d 645, 657 (Ariz. Ct. App. 2008); *In*

*re Hashim*, 356 B.R. 728, 739 (Bankr. D. Ariz. 2007) (In Arizona, "There is . . . a tort of

conspiracy to commit a fraudulent conveyance."). To state a claim for a conspiracy to commit a

fraudulent conveyance under Arizona law, the plaintiff must allege:

> a) *a fraudulent conveyance*; b) an agreement between two or more
> people to effect a fraudulent conveyance (i.e., conspiracy to
> commit a fraudulent conveyance); c) damages resulting from the
> conveyance that are traceable to the conspiracy; and d) inadequacy
> of the equitable remedies under the UFCA [the predecessor to the
> UFTA].

*Pearce v. Stone*, 720 P.2d 542, 545 (Ariz. Ct. App. 1986) (emphasis added); *see also*

*McElhanon*, 728 P.2d at 262-64; *In re Hashim*, 356 B.R. at 739. And again, Plaintiff has not

alleged a fraudulent conveyance. It has perhaps alleged that some sort of fraud was perpetrated

on Robert Allen by his relatives, but not that Robert Allen, with the intent to defraud his creditor

Excelsior, conveyed his own property to some third party. And because Plaintiff failed to allege

a fraudulent conveyance under Arizona law, it fails to allege conspiracy to commit a fraudulent

conveyance under Arizona law.

## C. The Aiding And Abetting A Fraudulent Transfer Claim Against McCarthy Is Dismissed

Plaintiff alleges that McCarthy aided and abetted Herbert Allen and Kramer in their

nefarious scheme. (Compl. ¶ 42.) The aiding and abetting claim fails for two reasons. First, as

discussed exhaustively above, Plaintiff fails to state a claim for fraudulent transfer against

anyone, and there can be no aiding and abetting if there is no primary liability. *In re Refco Sec.*

*Litig.*, 759 F. Supp. 2d 301, 333 (S.D.N.Y. 2010). Furthermore, neither New York nor Arizona

recognizes an independent cause of action for aiding and abetting a fraudulent conveyance. *See, e.g.*, *Warne Investments, Ltd. v. Higgins*, 195 P.3d 645, 656 (Ariz. Ct. App. 2008); *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012); *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 631 F. Supp. 335, 348 (S.D.N.Y. 1986), *aff'd*, 818 F.2d 240 (2d Cir. 1987).

Perhaps recognizing the futility of argument, Plaintiff did not discuss McCarthy's arguments for dismissal in its opposition papers. That, too, dooms its claim against him. "This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 688 (S.D.N.Y. 2012) (quoting *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)).

To the extent that Plaintiff alleges that McCarthy was a co-conspirator, rather than an aider and abettor, the claim must be dismissed for the reasons discussed under Point II.B above.

## CONCLUSION

For the reasons set forth above, the Court grants the Defendants' joint motion to dismiss, with prejudice.

The Clerk of the Court is directed to remove the motion at ECF No. 10 from the Court's list of pending motions, and to close this case.

Dated: September 26, 2012

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

24